IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Zhennan Yuan | ) C/A No.: 1:25-CV-10906-BEM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Todd M. Lyons, Acting Director, U.S. | ) |
| Immigration and Customs Enforcement, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**REPLY IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, PRELIMINARY INJUNCTION**

Courts in this District and others continue to enjoin Defendant U.S. Immigration and Customs Enforcement's ("ICE") unlawful SEVIS terminations. *Mashatti v. Lyons*, No. 1:25-cv-1100-RJL, ECF No. 10 (D.D.C. Apr. 17, 2025); *Patel v. Lyons*, 1:25-cv-01096-ACR, ECF No. 11 (D.D.C. Apr. 17, 2025); *Hinge v. Lyons*, 1:25-cv-01097-RBW, ECF No. 14 (D.D.C. Apr. 17, 2025); *see Wu v. Lyons*, No. 1: 25-cv-1089-NCM, ECF No. 9 (E.D.N.Y. April 11, 2025); *Zhou v. Lyons*, 2:25-cv-02994-CV-SK, ECF No. 19 (C.D. Cal. April 15, 2025); *Zheng v. Lyons*, 1:25-cv-10893-FDS, ECF No. 8 (D. Mass. Apr. 11, 2025); *Liu v. Noem*, No.: 1:25-cv-00133-SE-TSM, ECF No. 13 (D.N.H. Apr. 10, 2025); *Roe v. Noem*, No. 25-cv-40-BU-DLC, 2025 WL 1114694 (D. Mont. Apr. 15, 2025); *Doe v. NOEM, et al.*, No. 2:25-CV-01103-DAD-AC, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025); *but see Li v. Lyons*, 1:25-cv-1089, Minute Order (DDC Apr. 15, 2025) (denying TRO for lack of irreparable harm); *Choudary v. Lyons*, 2:25-cv-01173-MTL, ECF No. 14 (D. Ariz) (withholding judgment on TRO for additional briefing). And nothing in ICE's opposition here undermines this wave of injunctions.

Thus, this Court should grant Plaintiff's application for a temporary restraining order or, in the alternative, preliminary injunction to prevent irreparable harm to the Plaintiff. Because ICE has responded and this Court will hold a hearing, this Court should enter a preliminary injunction.

## I. The Privacy Act does not provide nonimmigrants an adequate alternative remedy.

ICE first argues that the Privacy Act provides an adequate alternative remedy—therefore precluding review under the Administrative Procedure Act—because Plaintiff seeks to challenge a change to a Privacy Act system of records. But ICE admits that nonimmigrants—like F-1 students—cannot bring a cause of action under the Privacy Act, only U.S. citizens and lawful permanent residents. Thus, "the Privacy Act clearly does not provide plaintiff another adequate remedy, as plaintiff's ability to seek relief under the Privacy Act is not even 'doubtful,' but nonexistent." *Doe v. NOEM, et al.*, No. 2:25-CV-01103-DAD-AC, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025). Thus, the Privacy Act does not preclude review over Plaintiff's APA challenge to ICE's termination of their SEVIS record and F-1 status because nonimmigrants like Plaintiff cannot bring claims under the Privacy Act.

## II. ICE's termination of Plaintiff's SEVIS record and F-1 status is a final agency action.

ICE next argues its termination of Plaintiff's SEVIS and F-1 status is not a final agency action because, assuming it's the consummation of ICE's decisionmaking process, there "are no legal consequences to the termination of [the] SEVIS record." ICE bases this argument on a single sentence in a declaration provided by Andre Watson, Assistant Director, National Security Division, Homeland Security Investigations, U.S. Immigration and Customs Enforcement. Mr. Watson claims: "Terminating a record in SEVIS does not terminate an individual's nonimmigrant

status in the United States" *Id.* at 10. But neither Defense counsel, ICE counsel, nor Mr. Watson can provide any support, explanation, or rationale for this claim made under oath.

In a hearing in a similar case in *Patel v. Lyons*, 1:25-cv-01096-ACR (D.D.C. Apr. 17, 2025), Judge Reyes questioned Defense counsel, ICE counsel, and Mr. Watson about this statement, and none provided support for the proposition that a termination of SEVIS does not also terminate F-1 status. Patel Transcr. (attached as Ex. A). Judge Reyes initially asked Defense counsel to identify the consequences of SEVIS termination, but he explained ICE had not given him sufficient information to answer the question. *Id.* at p. 4-6. Judge Reyes then required ICE's in-house counsel to join the hearing and answer the same question, but he too claimed ICE had not provided him information sufficient to answer the question. *Id.* at p. 13-15. Finally, Judge Reyes required Mr. Watson to appear at the hearing to answer questions. *Id.* at p. 18-23. Mr. Watson eloquently claimed termination was nothing more than a "red flag" and then intimated that ICE terminated the plaintiff's SEVIS record because the U.S. Department of State revoked the plaintiff's visa. *Id.* Mr. Watson's testimony cannot withstand even minimal scrutiny.

First, under ICE's own guidance, a SEVIS termination for failure to maintain status is more than a "red flag"; ICE requires students who are terminated for failing to maintain status (like Plaintiff) to either "leave the United States immediately" or "apply for reinstatement":

| Termination Reason | Duration of Status |
|---|---|
| **Termination for any violation of status** | • **No grace period.**<br>• If the student and dependents are still in the United States, the student must either apply for reinstatement, or the student and dependents must leave the United States immediately. |

https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/ter minate-a-student (last visited April 17, 2025). The only reason to require immediate departure is

3

if the SEVIS termination also ended the student's F-1 status. And an application for reinstatement seeks reinstatement of F-1 status or "student status," not merely reactivation of a terminated SEVIS record. *See* 8 C.F.R. § 214.2(f)(16). Thus, ICE's guidance clearly equates termination of SEVIS with termination of F-1 status. Second, Mr. Watson's insinuation that the SEVIS termination was a consequence of the State Department's revocation of plaintiff's visa defies ICE policy, which clearly states: "Visa revocation is not, in itself, a cause for termination of the student's SEVIS record." ICE Policy Guidance 1004-04 –Visa Revocations at 3 (June 7, 2020) (attached as Ex. B). Thus, Mr. Watson's apparent claim that ICE's SEVIS terminations are a consequence of the State Department's decisions to revoke visas is without any support in fact or law.

Two other courts in this District have similarly expressed concerns about ICE's inability to provide any support for the same claim in declarations provided by Mr. Watson in those cases. First, Judge Walton questioned Defense counsel about paragraph 10 of Mr. Watson's declaration and, in his written opinion granting the TRO, noted:

> In support of this assertion [that SEVIS termination did not terminate F-1 status], the defendant cited the tenth paragraph of the Declaration of Andre Watson, Assistant Director of ICE's National Security Division of Homeland Security Investigations, which the defendant filed as an attachment to his opposition. See Def.'s Opp'n, Exhibit ("Ex.") 1 (Declaration of Andre Watson) at 5, ECF No. 8-1 ("Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide [the Student Exchange Visitor Program ('SEVP')] the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed that it had terminated [the plaintiff's] nonimmigrant status. Furthermore, the authority to issue or revoke visas for nonimmigrant students like [the plaintiff] lies with the Department of State, not SEVP. Terminating a record within SEVIS does not effectuate a visa revocation."). However, even if this is true, in the April 14, 2025, hearing, government counsel was unable to confirm that ICE would not interpret its SEVIS record termination and the subsequent action taken by the plaintiff's university in response to that termination, as effectively terminating the plaintiff's F-1 status and providing grounds for the plaintiff to be subject to arrest, deportation, and accruing unlawful presence.

*Hinge v. Lyons*, No. 1:25-cv-1097-RBW, 2025 WL 1134966, at *5 n. 10 (D.D.C. Apr. 15, 2025); *see also id.* ("The Court expressed its concern during the April 14, 2025, hearing that although government counsel stated that the plaintiff's F-1 visa had not been revoked, government counsel expressed uncertainty as to whether the agency itself would confirm his representation on this point."). Judge Walton gave Defense Counsel additional time to get more information from ICE to clear up any "ambiguities," but at the subsequent hearing, Defense Counsel reported ICE did not give him any additional information to provide the Court and, therefore, the Court reaffirmed its restraining order. *Hinge v. Lyons*, 1:25-cv-01097-RBW, ECF No. 14 (D.D.C. Apr. 17, 2025).

Similarly, Judge Leon noted in his April 17, 2025 opinion granting the restraining order noted that: "Plaintiff argues that the termination of his SEVIS record means that he is unlawfully in the United States; during oral argument defense counsel, curiously, was unable to explain to the Court whether plaintiff's continued presence is unlawful and thus failed to counter plaintiff's argument." *Mashatti v. Lyons*, No. 1:25-cv-1100-RJL, ECF No. 10 at 4 (D.D.C. Apr. 17, 2025); *see id.* at 4 n.2 ("The Court can relate to plaintiff's confusion, as the parties take conflicting positions with respect to the effect of ICE terminating plaintiff's SEVIS record. Defense counsel's obfuscation on these points is telling and favors a TRO, as the Court is inclined to maintain the status quo pending further investigation of the merits.").

Despite ICE's internal discord, there can be no dispute that ICE's decision to terminate Plaintiff's SEVIS record ended his optional practical training program. Because Plaintiff is unable to participate in the optional practical training program, Plaintiff's work authorization associated with the training program is similarly invalid. ICE's SEVIS termination ended Plaintiff's F-1 status, which in turn ended his optional practical training program and deprived

him of work authorization. As such, ICE's argument that its SEVIS termination is not final because it had no legal consequences is not persuasive.

### III. ICE does not dispute Plaintiff's claim that the SEVIS termination is arbitrary and capricious.

ICE then argues that Plaintiff's Due Process claim and 5 U.S.C. §558(c) arguments fail. But ICE does not rebut, address, or dispute Plaintiff's *ultra vires* claim, reasoned decisionmaking claim, or its general arbitrary and capricious claim. Pl's Application at 9-10, 12-13. Because these claims are each an independent basis to succeed on the merits, ICE concedes Plaintiff is likely to succeed on the merits.

### IV. Plaintiff will suffer irreparable harm without an injunction.

ICE argues Plaintiff's claims to irreparable harm are insufficient because Plaintiff's claims of irreparable harm are monetary or speculative. Nothing could be further from the truth. No amount money can put Plaintiff back in F-1 status; loss of immigration status is not a monetary harm and it is not speculative here. Similarly, because ICE made a determination that Plaintiff failed to maintain status, ECF No. 2-5 at 1, Plaintiff is accruing unlawful presence. No amount of money can prevent Plaintiff from accruing unlawful presence and this harm is not speculative. Finally, Plaintiff can no longer work for their employer as part of the post graduate optional practical training program. In addition to the loss of work authorization, this stunts his professional training and experience. The harm to Plaintiff's professional development cannot be fixed with money and it is not speculative as Plaintiff cannot currently work.

### V. The equities favor Plaintiff.

ICE argues that the equities tip in favor of it because the executive has plenary authority over immigration. ICE does not explain how or why this tips the equities in its favor. *Id.* Rather, the public interest is served by ensuring ICE follows the law, especially where Plaintiff was deprived of any pretermination notice or opportunity to respond. ICE's repeated obfuscations related to the impact of its SEVIS termination further tip the equities in favor of an injunction because ICE is apparently unclear of the consequences of its own actions or it is simply misleading the Court to gain an advantage in litigation as the *Patel, Hinge,* and *Mashatti* cases indicate.

## VI. This Court should waive bond.

Finally, ICE requests that this Court impose a bond on Plaintiff if it decides to grant Plaintiff's motion. But bond is only appropriate in an amount any costs or damages ICE may sustain as the result of an injunction, and ICE identifies no such costs or damages. It further gives no indication of what an "appropriate amount" of bond would be. *Id.* Further, considering ICE's position that SEVIS termination has no legal consequences, it cannot show that bond in any amount is appropriate. That said, if this Court imposes a bond, Plaintiff will take all necessary steps to meet the requirement.

Date: April /25/2025

Respectfully submitted,

*Zhennan Yuan*

Zhennan Yuan
Plaintiff